IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

VANESSA DAWN RADCLIFF                                                              PLAINTIFF

V.                                         NO. 12-2189

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration            DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Vanessa Dawn Radcliff, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

Plaintiff filed her applications for DIB and SSI on March 20, 2009, and April 1, 2009, respectively, alleging disability since January 2, 2007, due to "High blood pressure, chronic back pain, anxity[sic] I have high blood pressure and chronic back painanzity[sic]." (Tr. 170-176, 225). An administrative hearing was held on May 6, 2010, at which Plaintiff appeared with counsel and testified. (Tr. 74-122).

By written decision dated February 8, 2011, the ALJ found that during the relevant time

---

[1]Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

period, Plaintiff had an impairment or combination of impairments that were severe - degenerative disc disease of the lumbar spine, hypertension, a left ovarian cyst, major depressive disorder, and anxiety disorder. (Tr. 61). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 61). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant may occasionally balance or stoop, and is to avoid work requiring climbing, kneeling, crouching or crawling, concentrated exposure to hazards, unprotected heights, and dangerous unprotected moving machinery (including operating motor vehicles). The claimant is limited to work that consists of simple tasks with routine supervision and superficial contact with co-workers and supervisors that is incidental to the work performed and does not involve any contact with the general public.

(Tr. 63). With the help of a vocational expert (VE), the ALJ determined Plaintiff was not capable of performing her past relevant work, but that there were other jobs Plaintiff would able to perform, such as the electronic assembler job of patcher. (Tr. 67-68). Plaintiff then requested a review of the hearing decision by the Appeals Council, which considered additional materials, found that the new information was about a period not related to Plaintiff's period at issue, and therefore did not affect the decision about whether she was disabled beginning on or before February 8, 2011, and denied the request on July 25, 2012. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 6, 7).

**I.     Evidence Presented:**

Plaintiff was born in 1980 and completed grade twelve. (Tr. 221, 231). Plaintiff was

assessed with hypertension on June 6, 2007, by her treating physician, Dr. Joe Dunaway, D.O. (Tr. 364).

On September 11, 2007, Plaintiff presented herself to Johnson Regional Medical Center, complaining that she slipped on the floor and hurt her right shoulder. (Tr. 290). X-rays taken of her right shoulder were negative. (Tr. 291). The clinical impression was strained right shoulder. (Tr. 293).

On November 20, 2007, Plaintiff saw Dr. Dunaway for follow up on her blood pressure. (Tr. 362). She was assessed with hypertension and DOE.[2] On November 26, 2007, an echocardiogram was performed and was normal. (Tr. 394).

On March 12, 2008, Plaintiff saw Dr. Shannon Case at the Family Practice Clinic, and was assessed as follows:

> 1. 9 weeks, 6 day gestation
> 2. Chronic HTN
> 3. Previous c-section secondary to pregnancy-induced HTN

(Tr. 361). On March 27, 2008, a cytolopathology report stated it was negative for intraepithelial lesion or malignancy, and that there was a shift in vaginal flora, suggestive of bacterial vaginosis. (Tr. 383).

On August 30, 2008, and September 21, 2008, Plaintiff complained to Johnson Regional Medical Center of back pain. (Tr. 298, 345). On October 23, 2008, Plaintiff was assessed at Johnson Regional Medical Center as a ½ pack per day smoker, 38 weeks pregnant, previous cesarean section, undesired fertility, and chronic hypertension. (Tr. 355-356).

On March 17, 2009, Plaintiff presented herself to Dr. Dunaway for a check up and refills

---

[2]The Court believes this is intended to be an abbreviation of dyspnea on exertion.

-3-

of her medication. (Tr. 360). Plaintiff reported that her back pain was going into her left leg, and that Levacet was not helping her. (Tr. 360). She was assessed with back pain, insomnia, and congestion. (Tr. 360).

On May 27, 2009, Plaintiff saw Dr. Case, complaining of pelvic pain and heavy periods since her tubal ligation seven months previously. (Tr. 401). Plaintiff was otherwise reported as doing well. (Tr. 401).

On May 28, 2009, Dr. Michael R. Westbrook conducted a General Physical Examination. (Tr. 404-408). Upon examination, Plaintiff's ranges of motion and limb functions were within normal limits. (Tr. 406-407). She was unable to feel a pin prick over her entire body and her gait and coordination were within normal limits. (Tr. 407). She was diagnosed with back pain, anxiety and hypertension, and no limitations were noted by Dr. Westbrook. (Tr. 408).

On July 2, 2009, Plaintiff presented herself to Johnson Regional Medical Center, complaining of a history of high blood pressure and heavy periods, and the clinical impression was a 3.5 mm. left ovarian cyst. (Tr. 414, 416). On that same day, Plaintiff presented to Dr. Dunaway, complaining of menstrual pain. (Tr. 488). She was assessed with dysfunctional uterine bleeding and hypertension. (Tr. 488).

On September 7, 2009, Plaintiff presented herself to Johnson Regional Medical Center, complaining of chest pain and high blood pressure. The clinical impression was chest pain. (Tr. 424). X-rays of Plaintiff's chest were normal. (Tr. 427).

On September 14, 2009, Plaintiff again presented herself to Johnson Regional Medical Center, complaining that she fell at home and injured her left leg and lower back. (Tr. 428). The clinical impression was acute back strain. (Tr. 429).

On December 7, 2009, Plaintiff saw Dr. Dunaway, complaining of thoracic and lumbar pain. (Tr. 486). She wanted an MRI of her back and stated that pain went down her back and into her left leg. She also stated she had headaches since starting Lisinopril. (Tr. 486). Dr. Dunaway diagnosed Plaintiff with hypertension, back pain with neuropathy pain into her left leg, and headaches. (Tr. 486). A lumbar MRI was performed on December 9, 2009, which revealed a midline disc protrusion L4-5 with effacement of the anterior thecal sac. (Tr. 471).

On December 15, 2009, Plaintiff saw Dr. Scott M. Schlesinger of the Arkansas Neurosurgery Brain & Spine Clinic, P.A. (Tr. 490-492). Dr. Schlesinger found that Plaintiff's range of motion in the lumbar spine was full in all planes; the range of motion of the joints of the lower extremities was full without pain, including a negative Patrick's test for hip pathology; there was tenderness to palpation of the lower lumbar spine; there was slight scoliosis noted on inspection; straight leg testing was negative bilaterally; crossed straight leg testing was negative bilaterally; there was normal 5/5 strength and function in bilateral proximal and sital muscles of upper and lower extremities; no fasciculations were seen; there was no sensory dysfunction of the face, trunk or extremities; her gait was within normal limits; no deficits of memory were noted; and there were no abnormalities of attention or concentration noted. (Tr. 490-491). Dr. Schlesinger concluded that there was nothing surgical to do, and that she should be treated conservatively with lumbar epidural injections. If she did not respond to that, he reported that she would perhaps benefit from facet injection, particularly the left L5-S1, and possibly then the L4-5 level. (Tr. 492).

On December 22, 2009, Plaintiff saw Dr. Dunaway, and he assessed her with hypertension, back pain, and allergies. (Tr. 485).

On January 22, 2010, Plaintiff again saw Dr. Dunaway, complaining of pain in her back that went into her legs. She was assessed with hypertension, protruding disc to the L4-5 with effusion, and insomnia. (Tr. 484). Also on January 22, 2010, a Physical RFC Questionnaire was completed by Dr. Dunaway. (Tr. 439-444). In said questionnaire, Dr. Dunaway diagnosed Plaintiff with midline disc protrusion L4-5 with effacement of the anterior thecal sac. (Tr. 439). He reported that emotional factors did not contribute to the severity of Plaintiff's symptoms and functional limitations, but found that Plaintiff's experience of pain or other symptoms were constantly severe enough to interfere with attention and concentration needed to perform even simple work tasks. (Tr. 440). Nevertheless, Dr. Dunaway reported that Plaintiff could tolerate moderate stress, but high stress would make the pain worse. (Tr. 440). Dr. Dunaway made other findings in the report, including that Plaintiff was likely to be absent from work more than four days per month. (Tr. 443).

On January 26, 2010, Plaintiff received an epidural steroid injection from Dr. Schlesinger at L5-S1. (Tr. 493).

On February 2, 2010, Plaintiff saw Dr. Dunaway, complaining of cramping and lower back pain. (Tr. 483). She was assessed with "M/S" back pain and sacroilitis. (Tr. 483). Plaintiff next saw Dr. Dunaway on March 15, 2010, complaining of nausea, vomiting, diarrhea, and stomach cramping. (Tr. 481). She was assessed with gastroenteritis, hypertension, dysmenorrhea, and anxiety. (Tr. 481).

On April 8, 2010, Plaintiff was seen at DaySpring Behavioral Health Services by Jodi Pearson, LPC. (Tr. 503-510). Plaintiff was diagnosed as follows:

        Axis I:        Anxiety disorder nos

        Axis II:        diagnosis deferred
        Axis IV:       primary support group, social
        Axis V:        GAF 41

(Tr. 510).

On April 14, 2010, plaintiff received a lumbar facet joint injection, left sided L5-S1. (Tr. 497).

On April 15, 2010, Ms. Pearson completed a Mental Impairment Questionnaire. (Tr. 474-479). Her diagnosis was:

        Axis I:         300.00 Anxiety D/O NOS
        Axis II:       799.9 deferred
        Axis III:      Back pain, high blood pressure
        Axis IV:      social
        Axis V:       Current GAF - 41
                           Highest GAF past year - 60

(Tr. 474). Ms. Pearson further found that Plaintiff had no useful ability to function in the following categories: working in coordination or proximity to others without being unduly distracted; completing a normal workday and workweek without interruptions from psychologically based symptoms; accepting instructions and responding appropriately to criticism from supervisors; understanding and remembering detailed instructions; carrying out detailed instructions; and dealing with stress of semiskilled and skilled work. (Tr. 476). She concluded that Plaintiff did not have a low IQ or reduced intellectual functioning, and that her psychiatric condition did not exacerbate Plaintiff's experience of pain or any other physical symptom. (Tr. 477). Ms. Pearson also reported that Plaintiff had marked degree of limitation in three categories and three episodes of decompensation.[3] (Tr. 478). She noted that Plaintiff had

---

[3]The record does not support a finding of three episodes of decompensation.

-7-

AO72A
(Rev. 8/82)

not worked for two years, spent almost all of her time at home, that anxiety kept her at home, and had a great deal of anxiety when she went anywhere. (Tr. 478). Ms. Pearson concluded that Plaintiff was likely to miss more than four days per month. (Tr. 479).

Plaintiff received another lumbar facet joint injection on May 4, 2010. (Tr. 498).

On May 6, 2010, Plaintiff saw Dr. Marion Stowers of DaySpring Behavioral Health Services. (Tr. 500-501). In her revised diagnosis, Dr. Stowers found as follows:

>  Axis I:    296.21 - Major depressive disorder, single episode mild de
>             300.02 - generalized anxiety disorder
>  Axis IV:   Social
>  Axis V:    GAF 45

(Tr. 501).

On July 26, 2010, a Mental Diagnostic Evaluation was performed by Steve A. Shry, Ph.D., Clinical Psychologist. (Tr. 513-515). Dr. Shry estimated Plaintiff's intellectual functioning level to be borderline range. (Tr. 514). He also found that Plaintiff appeared to meet the diagnostic criteria for Adjustment Reaction as defined by the DSM IV. (Tr. 515). His diagnosis was:

>  Axis I:    Adjustment Reaction, depression with mixed anxiety features (mild to moderate)
>  Axis II:   None
>  Axis V:    GAF 50-55

(Tr. 515). Dr. Shry reported that Plaintiff was capable of handling her own hygiene and dressing without assistance, was able to drive, perform household chores and shop. (Tr. 515). Dr. Shry also reported that Plaintiff did not seem to be impaired in her ability to communicate and interact in a socially, intelligible and effective manner; did not demonstrate difficulty comprehending and carrying out simple tasks; did appear to be limited in her ability to cope with the typical demands

-8-

of basic work like tasks when the tasks were complex; may be mildly impaired in her ability to attend and sustain concentration on tasks; did not appear to be impaired in her ability to sustain persistence when completing tasks; and did not seem to be impaired in her ability to complete work like tasks within acceptable time frames when the tasks were simple. (Tr. 515). Dr. Shry also completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) on July 26, 2010. (Tr. 519). He found that Plaintiff had marked limitations in understanding and remembering complex instructions; carrying out complex instructions; and the ability to make judgments on complex work-related decision. (Tr. 519). He also found she could not manage benefits because of her poor math skills. (Tr. 521).

On August 12, 2010, Plaintiff presented herself to Johnson Regional Medical Center, complaining of mid/upper back pain, nausea, and protruding disks, and pain after moving furniture that morning. (Tr. 526-527). She was diagnosed with low back strain. (Tr. 531).

Plaintiff received treatment at Healing Arts Medical Center from December 17, 2010 through March 4, 2011, by Dr. William Piechal, D.O. (Tr. 577-584). On December 17, 2010, Plaintiff reported that she had tingling in her hands and feet after shots. (Tr. 577). On March 4, 2011, Plaintiff was diagnosed with unsp. enthesopathy,[4] abdominal pain, and spinal enthesopathy. (Tr. 582).

On October 11, 2011, after the ALJ's decision, Plaintiff complained to Dr. W.E. Buddy Williams, D.O. of excessive cycles, and also had abdominal pain and a possible urinary tract infection, back pain and urinary frequency. (Tr. 592). She was assessed with dysfunctional

---

[4] Enthesopathy - A disease process occurring at the site of insertion of muscle tendons and ligaments into bones or joint capsules. Stedman's Medical Dictionary 649 (28th ed. 2006).

uterine bleeding. (Tr. 592). Plaintiff again saw Dr. Williams on January 12, 2010, complaining of nausea and stomach pain. (Tr. 591). She was assessed with abdominal pain and nausea/vomiting. (Tr. 591).

February 14, 2012 Physical Therapy records from Johnson Regional Medical Center indicate that Plaintiff discontinued the therapy without authorization and did not complete the recommended ten therapy visits. (Tr. 28). At that time, it was noted that Plaintiff was still working half days and caring for a two year old. (Tr. 34).

On June 4, 2012, a record from the Arkansas Workers' Compensation Commission reveals that Plaintiff was lifting some groceries for a patient out of her car to her house and injured her lower back. (Tr. 49).

At the hearing, Plaintiff testified that her blood pressure was under control until the day before the hearing, when she got her second shot, when her blood pressure was low. (Tr. 92).

## II.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In

other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**IV. Discussion:**

Plaintiff raises the following arguments on appeal: 1) The ALJ failed to fully and fairly develop the record: 2)The ALJ failed to consider limitations of fatigue, chronic pain, and difficulty sleeping; 3) The ALJ erred in his credibility findings; 4)The ALJ gave improper weight to the treating physician's opinion; 5) The ALJ erred in his RFC assessment; and 5) The ALJ failed to satisfy the burden of proof at Step 5. (Doc. 6).

**A.     Failure to Fully and Fairly Develop the Record:**

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 989).

Plaintiff contends that the ALJ had an obligation to re-contact Dr. Dunaway and Ms.

Pearson and ask certain questions. The ALJ considered Dr. Dunaway's opinion, noting that as a treating physician, he would normally command great weight for his opinion. However, the ALJ concluded that the medical evidence did not support the extreme restrictions assigned by Dr. Dunaway to Plaintiff, due to her intermittent pain. (Tr. 65). He continued:

> It also does not help the credibility of Exhibit 9F that it is the product of a pre-printed form questionnaire, submitted to Dr. Dunaway by the claimant's attorney, which includes a number of leading questions and similar inducements. The form is not designed for objectivity, but rather for verification of some suggested conclusions about the claimant's allegedly diminished health and fitness. The undersigned gives very limited weight to the opinion of Dr. Dunaway because it is inconsistent with the overall record.

(Tr. 65). "'The checklist format, generality, and incompleteness of the assessments limit [the assessments'] evidentiary value.'" Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010)(quoting from Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001); Armstrong v. Colvin, No. 12CV507JAR, 2013 WL 3225783 at *13 (E.D. Mo., June 25, 2013). The record as a whole does not support the limitations imposed by Dr. Dunaway, and the ALJ was legally justified in giving Dr. Dunaway's opinion limited weight.

With respect to Ms. Pearson's opinion, the ALJ was also warranted in giving Ms. Pearson's opinion as to Plaintiff's limitations no weight. Although the ALJ did consider Ms. Pearson's opinion, and gave great weight to the medical records establishing a severe mental impairment, he gave her severe limitations no weight, noting that no acceptable source rendered an opinion as to the limitations associated with Plaintiff's mental impairments. (Tr. 66). Instead, the ALJ had the benefit of Dr. Steve Shry's Mental Diagnostic Evaluation, to which he gave great weight. The Court is of the opinion that the existing medical sources contained sufficient

evidence for the ALJ to make a determination, and he was not obligated to re-contact Dr. Dunaway or Ms. Pearson.

Finally, Plaintiff has not presented any evidence showing that had the ALJ requested additional information from Dr. Dunaway or Ms. Pearson, the ALJ would have arrived at a different decision.

The Court believes there is substantial evidence to support the fact that the ALJ did not fail to fully and fairly develop the record.

**B.     Consideration of Fatigue, Pain and Insomnia:**

Plaintiff argues that the ALJ failed to consider her impairments of fatigue, chronic pain and difficulty sleeping and insomnia.  The ALJ noted that Plaintiff also received medical treatment for a "variety of common medical problems that do not rise to the level of severe impairments." (Tr. 61).  The ALJ acknowledged that Plaintiff had high blood pressure and that she testified that her medications caused her to feel dizzy and tired, all of which were supported by the medical evidence of record. (Tr. 65). Accordingly, the ALJ limited Plaintiff's RFC assessment by finding that Plaintiff may only occasionally balance and must avoid concentrated exposure to hazards and may not work where there are unprotected heights, dangerous unprotected moving machinery, or where she was required to drive. (Tr. 65).  In addition, the ALJ had the opinion of Dr.Shry before him, who found that Plaintiff did not demonstrate difficulty comprehending and carrying out simple tasks, may be only mildly impaired in her ability to attend and sustain concentration on tasks, and did not appear to be impaired in her ability to sustain persistence when completing tasks or in her ability to complete work like tasks within acceptable time frames when the tasks were simple.  (Tr. 515).

The Court believes there is substantial evidence that the ALJ considered Plaintiff's limitations due to fatigue, pain and insomnia.

**C.     Credibility Findings:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his opinion, the ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with his RFC assessment. (Tr. 64). The ALJ addressed inconsistencies in Plaintiff's own testimony, and also noted that Plaintiff was being treated conservatively with lumbar facet and epidural injections, the fact that the lumbar films were negative for neural compression, and that treating physicians made no referral for surgical treatment. (Tr. 64). The ALJ also addressed Plaintiff's daily activities, noting that Plaintiff admitted that she was able to handle her own hygiene and dress without assistance, drive, perform some household chores, and shop. (Tr. 64).

AO72A
(Rev. 8/82)

In addition, as noted above, the ALJ specifically addressed Plaintiff's medication side effects, and limited Plaintiff's RFC to occasionally balance and to avoid concentrated exposure to hazards, to work where there were unprotected heights and dangerous unprotected moving machinery, or where she was required to drive.

Based upon the foregoing, the Court believes there is substantial evidence to support the ALJ's credibility findings.

**D.     Weight given to Treating Physician and RFC Findings:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own description of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

The ALJ found that Plaintiff had the RFC to perform less than the full range of sedentary work, with certain limitations. (Tr. 63). The Court previously discussed the weight the ALJ gave to Dr. Dunaway, Ms. Pearson, and Dr. Shry. In addition, the ALJ noted that Dr. Westbrook

listed no limitations in Plaintiff's ability to do work activities, and gave Dr. Westbrook's opinion limited weight to the extent it was consistent with the RFC assessment. (Tr. 66). The ALJ limited Plaintiff to work that consisted of simple tasks, with routine supervision and superficial contact with co-workers and supervisors that was incidental to the work performed and did not involve any contact with the general public. This limitation addressed Dr. Shry's opinion that Plaintiff would be limited in her ability to cope with the typical demands of basic work like tasks when the tasks were complex.

The Court believes there is substantial evidence to support the ALJ's assessment of Plaintiff's ability to function in the workplace.

**E.     Step 5 Findings:**

Plaintiff contends that the ALJ's hypothetical question did not include all of the impairments from which Plaintiff suffered and therefore, the ALJ should not have relied upon the VE's testimony.

At the hearing held before the ALJ, the VE testified that Plaintiff would not be able to perform her past work, but that she would be able to perform the electronic assembler job of patcher. (Tr. 67-68). The ALJ's hypothetical question set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court believes that the VE's responses to the hypothetical question constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing other work as a patcher. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from VE based on properly phrased hypothetical question constitutes substantial evidence).

Based upon the ALJ's RFC findings, which this Court believes to be supported by substantial evidence, along with the testimony of the VE, the Court is of the opinion that substantial evidence supports the ALJ's finding that there was another job Plaintiff could perform.

**IV.    Conclusion:**

Based upon the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 24th day of July, 2013.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)